UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINE M. BOWMAN,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO HOME MORTGAGE,<br><br>Defendant. | Case No. 13-cv-05850-MEJ<br><br>**ORDER RE: MOTION TO DISMISS**<br><br>Re: Dkt. No. 5 |

## INTRODUCTION

Pending before the Court is Defendant Wells Fargo Bank N.A.'s[1] Motion to Dismiss Plaintiff Christine Bowman's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Dkt. No. 5. Plaintiff filed an Opposition on May 12, 2014. Dkt. No. 25. The Court finds this motion suitable for disposition without oral argument. Civ. L.R. 7-1(b). Having considered the parties' papers, relevant legal authority, and the record in this case, the Court **DENIES** Wells Fargo's Motion for the reasons set forth below.

## BACKGROUND

Plaintiff purchased the property located at 3532 Harbor View Avenue, Oakland, California (the "Property") in 2001. Compl. ¶ 15 (Not. of Rem. Ex. A), Dkt. No. 1. She refinanced on August 20, 2004, at which time Plaintiff borrowed $466,800.00 from World Savings Bank, FSB, secured by a deed of trust recorded against the property.[2] *Id*. ¶ 15; Req. for Jud. Not. ("RJN") Ex.

---

[1] Wells Fargo Bank N.A. is the successor by merger with Wells Fargo Bank Southwest, N.A., formerly known as Wachovia Mortgage FSB, formerly known as World Savings Bank, FSB (erroneously named in this case as "Wells Fargo Home Mortgage").
[2] Along with its Motion to Dismiss, Wells Fargo requested that the Court take judicial notice of the following documents: (1) Deed of Trust dated August 11, 2004, signed by Plaintiff and recorded in the Official Records of the Alameda County Recorder's Office on August 20, 2004, as

1  A, Dkt. No. 6. In January 2008, World Savings Bank, FSB changed its name to Wachovia

2  Mortgage, FSB, and later changed its name to Wells Fargo Bank Southwest, N.A., before merging

3  into Wells Fargo Bank, N.A. in November 2009. RJN Exs. B-F.

4  In 2010, Plaintiff lost her job and applied for a loan modification with Wells Fargo, but

5  kept current on her mortgage payments. Compl. ¶ 16. In September 2011, Wells Fargo offered

6  her a forbearance program. *Id.* ¶ 17. Plaintiff did not realize that at the end of the forbearance

7  period, she was required to pay back the amount paid. *Id.* When the program expired in October

8  2012, Plaintiff alleges she was told for the first time that she had to reimburse Wells Fargo for the

9  unpaid payments. *Id.* ¶ 18. As she could not make the payments, she began the process of being

10 reviewed for another loan modification.[3] *Id.*

11 Plaintiff met and worked with a representative Housing and Urban Development agency in

12 August 2012. *Id.* ¶ 19. In October 2012, she went to an event and sat face to face with an

13 employee of Wells Fargo, at which time she applied for the loan modification. *Id.* On February

14 28, 2013, Plaintiff contacted her single point of contact at Wells Fargo, Delia Ponce, and was told

15 they were waiting for an appraisal, after which they would make a determination. *Id.* ¶ 20.

---

Document No. 2004379983 (Ex. A); (2) Certificate of Corporate Existence dated April 21, 2006, issued by the Office of Thrift Supervision, Department of the Treasury ("OTS"), certifying that World Savings Bank, FSB, was a federal savings bank (Ex. B); (3) Letter dated November 19, 2007, on the letterhead of the OTS authorizing a name change from World Savings Bank, FSB to Wachovia Mortgage, FSB (Ex. C); (4) Charter of Wachovia Mortgage, FSB, dated December 31, 2007, reflecting in Section 4 that it is subject to HOLA and the OTS (Ex. D); (5) Official Certification of the Comptroller of the Currency ("OCC") stating that effective November 1, 2009, Wachovia Mortgage, FSB converted to Wells Fargo Bank Southwest, N.A., which then merged with and into Wells Fargo Bank, N.A. (Ex. E); (6) Printout from the website of the Federal Deposit Insurance Corporation dated September 2, 2010, showing the history of Wachovia Mortgage, FSB (Ex. F); (7) Notice of Default dated April 4, 2013 and recorded in the Official Records of the Alameda County Recorder's Office on April 8, 2013 as Document No. 2013124758 (Ex. G); and (8) National Mortgage Settlement Consent Judgment, filed on April 4, 2012 in United States District Court for the District of Columbia, Case No. 1:12-cv-00361-RMC entitled *United States of America v Bank of America Corp. et al.* (Ex. H). Plaintiff filed no objections to Wells Fargo's request. Pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of Exhibits A and G-H attached to Wells Fargo's request because they are matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). With respect to Exhibits B through F, judicial notice is appropriate because those documents reflect the official acts of the executive branch of the United States, pursuant to Rule 201(b)(2). *Preciado v. Wells Fargo Home Mortg.*, 2013 WL 1899929, at *3 (N.D. Cal. May 7, 2013) (citations omitted).

[3] Plaintiff does not explain what happened as a result of the loan modification request she made in 2010.

United States District Court
Northern District of California

Wells Fargo denied Plaintiff's modification on March 15, 2013. *Id.* ¶ 21. Plaintiff immediately contacted Ms. Ponce and informed her that she was appealing the decision based on her change in income and decreased debts. *Id.* Plaintiff also discussed her appeal on March 17 with Michael Valsquez, who Plaintiff states is "possibly a manager" at Wells Fargo. *Id.* Mr. Valsquez reviewed Plaintiff's financial information and informed her that, based on the current financials, "she was now in the ball park for a loan modification approval." *Id.* He encouraged Plaintiff to reapply. *Id.* Plaintiff also spoke with Ms. Ponce on March 21 and April 9, 2013, at which time she was informed that her account still showed she was in active review for an appeal. *Id.* ¶ 22.

On April 8, 2013, a Notice of Default was filed. *Id.* ¶ 23; RJN Ex. G. In the meantime, Plaintiff continued to work on her loan modification, faxing additional documents and a loan modification package. Compl. ¶ 24. While working on the modification, Plaintiff alleges she received conflicting letters regarding her loan, both the modification and foreclosure proceedings. *Id.* ¶ 25. She called Ms. Ponce, who assured Plaintiff that she should not worry about the foreclosure letters since Wells Fargo would not proceed with foreclosure while Plaintiff was seeking a modification. *Id.*

Plaintiff alleges that Ms. Ponce also encouraged her to attend a conference in Richmond, at which she could immediately qualify for a loan modification. *Id.* ¶ 26. However, Plaintiff was told at the conference that they were missing an appraisal for the property, so they could not determine if she was qualified. *Id.* ¶ 27. Plaintiff states that Ms. Ponce never told her she needed an appraisal to qualify. *Id.* ¶ 28.

Plaintiff's loan modification was denied on August 26, 2013. *Id.* ¶ 30. There is no dispute that Plaintiff defaulted on the loan. Compl. ¶¶ 16-18.

Plaintiff filed her Complaint on November 18, 2013, in the Superior Court of the State of California for the County of Alameda, and Wells Fargo removed it to this Court on December 18, 2013. Dkt. No. 1. She alleges two causes of action: (1) violation of the California Homeowner Bill of Rights ("HBOR") section 2923.6; and (2) negligence. Compl. ¶¶ 43-57. She seeks general and special damages, an injunction for sale of the property, an equitable accounting, and attorney's

3

fees and costs.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law").

Even under the liberal pleading standard of Rule 8(a)(2), under which a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555.) "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively"). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and

common sense." *Id.* at 663-64.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted).

## DISCUSSION

### A.   Preemption under the Home Owners Loan Act

In its Motion, Wells Fargo argues that Plaintiff's state law claims are preempted by the Home Owners Loan Act ("HOLA"), 12 U.S.C. § 1461 *et seq.*  Mot. at 2-8.  In response, Plaintiff argues that her Complaint is not preempted because the alleged wrongful conduct occurred after Wachovia merged into Wells Fargo.  Opp'n at 9.

HOLA created the Office of Thrift Supervision ("OTS") to administer the statute, and "it provided the OTS with 'plenary authority' to promulgate regulations involving the operation of federal savings associations." *State Farm Bank v. Reardon*, 539 F.3d 336, 342 (6th Cir. 2008). Under one of those regulations, 12 C.F.R. § 560.2, OTS makes clear that it "occupies the entire field of lending regulation for federal savings associations," leaving no room for conflicting state laws. The regulation goes on to provide a non-exhaustive list of examples of state laws that are expressly preempted. *See* 12 C.F.R. § 560.2(b).  If the state law is one of the enumerated types, "the analysis will end there; the law is preempted." *Silvas v. E Trade Mortgage Corp.*, 514 F.3d 1001, 1005 (9th Cir. 2008).  If it is not, then the court is to determine "whether the law affects lending." *Id.* (internal quotation marks omitted).

The Ninth Circuit has not addressed the issue of whether HOLA applies to Wells Fargo, given that it is not a federal savings association.  Courts have held that a successor-in-interest may properly assert HOLA preemption even if the successor is not a federal savings association. *Appling v. Wachovia Mortgage, FSB*, 745 F. Supp. 2d 961, 971 (N.D. Cal. 2010) ("although Wells Fargo itself is not subject to HOLA and OTS regulations, this action is nonetheless governed by HOLA because Plaintiff's loan originated with a federal savings bank") (citation omitted).

"Other district courts have more recently questioned the logic of allowing a successor party

5

such as Wells Fargo to assert HOLA preemption, especially when the wrongful conduct alleged was done after the federal savings association or bank ceased to exist." *Rijhwani v. Wells Fargo Home Mortgage, Inc.*, 2014 WL 890016, at *7 (N.D. Cal. Mar. 3, 2014) (collecting cases). "Those courts usually have applied HOLA preemption only to conduct occurring before the loan changed hands from the federal savings association or bank to the entity not governed by HOLA." *Id.* (collecting cases). "This is because 'preemption is not some sort of asset that can be bargained, sold, or transferred....'" *Id.* (quoting *Gerber v. Wells Fargo Bank, N.A.*, 2012 WL 413997, at *4 (D. Ariz. Feb. 9, 2012). As one court explained:

> The important consideration is the nature of the alleged claims that are the subject of the suit. The governing laws would be those applicable to [World Savings Bank] at the time the alleged misconduct occurred. Wells Fargo, being the successor corporation to Wachovia Mortgage and thus [World Savings Bank], succeeds to those liabilities, whatever the governing law at that time may be. Therefore, [World Savings Bank's] conduct before its merger with Wells Fargo on November 1, 2009 would be governed by HOLA where appropriate, while Wells Fargo's own conduct after that date would not.

*Rhue v. Wells Fargo Home Mortgage, Inc.*, 2012 WL 8303189, at *3 (C.D. Cal. Nov. 27, 2012); *see also Rijhwani*, 2014 WL 890016, at *7.

The Court finds this reasoning persuasive, and in light of there being no binding Ninth Circuit authority, the Court applies it to this action. Here, all of the wrongful conduct alleged by Plaintiff was done by Wells Fargo and occurred from 2011 to 2013, well after Wachovia merged into Wells Fargo. This means that Wells Fargo, which is not a federal savings association or bank, may not assert HOLA preemption in this action.

**B.      Section 2923.6 of the California Homeowner's Bill of Rights**

In her First Cause of Action for violation of section 2923.6, Plaintiff alleges that Wells Fargo engaged in dual tracking. Compl. ¶ 48. She alleges that Wells Fargo violated California Civil Code section 2923.6 because "she did not receive an explanation for the denial [of her loan modification request], nor was she informed of her right to appeal." *Id.* She further alleges that Wells Fargo recorded a Notice of Default while her appeal was still in the review process. Opp'n at 14.

6

In its Motion, Wells Fargo argues that because it is a signatory to the National Mortgage Settlement ("NMS") and in compliance with the NMS's terms, it is insulated from liability for alleged HBOR violations. Mot. at 8. Under California Civil Code section 2924.12, a signatory to the NMS "shall have no liability for a violation of §§ 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11 or 2924.17" as long as the signatory is in compliance with the relevant terms from the Settlement Term Sheet. "Wells Fargo's argument fails at the motion to dismiss stage, however, because this safe harbor, so to speak, appears to be an affirmative defense to be raised on summary judgment and for which Wells Fargo has the burden of proof." *Rijhwani*, 2014 WL 890016, at *9; *see also Winterbower v. Wells Fargo Bank, N.A.*, 2013 WL 1232997, at *3 (C.D. Cal. Mar. 27, 2013).

As to the substance of her claim, Wells Fargo argues that it must fail because she is not entitled to damages for any alleged violation of section 2923.6 pre-foreclosure. Mot. at 9. As there is no allegation that a foreclosure has taken place, and Wells Fargo contends there are no allegations that Plaintiff has suffered "actual economic damages" as a result to the alleged changes, Wells Fargo argues that Plaintiff's claim must be dismissed. *Id.*

Section 2923.6(c) provides, in relevant part, that "[i]f a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending." Cal. Civ. Code § 2923.6(c). That subsection goes on to state that a servicer "shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs: (1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired; (2) The borrower does not accept an offered first lien loan modification within 14 days of the offer; (3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification." *Id.* Subsection (d)'s appeal period states that "the borrower shall have at least 30 days from the date of the written denial to appeal the denial and to provide evidence that the

7

mortgage servicer's determination was in error." *Id.* § 2923.6(d).

Here, Plaintiff alleges that Wells Fargo denied her loan modification application and that before 31 days had expired, a Notice of Default was recorded by Wells Fargo against her. Compl. ¶¶ 21, 23. Plaintiff also avers that when the Notice of Default was recorded, Plaintiff's appeal was still in the review process. *Id.* ¶ 24. Taken as true and construed in the light most favorable to Plaintiff, the Court finds that Plaintiff has properly pled a claim for violation of Civil Code section 2923.6. *Vasquez v. Bank of Am., N.A.*, 2013 WL 6001924, at *6, 9 (N.D. Cal. Nov. 12, 2013) (denying servicer's motion to dismiss because servicer recorded an NTS without waiting the 30-day appeal period after denying borrower's application). Accordingly, Wells Fargo's Motion is DENIED as to Plaintiff's section 2923.6 claim.[4]

## C.     Negligence

In her Second Cause of Action for negligence, Plaintiff alleges that Wells Fargo owed her a duty of care in processing her loan modification application. Compl. ¶¶ 53. By telling her to reapply for a loan modification, Wells Fargo undertook the duty of exercising care in processing her request. *Id.* ¶ 55. Plaintiff alleges Wells Fargo breached that duty by not properly assessing her income, filing a notice of default while still reviewing the modification, denying her modification, and not providing her with information regarding her legal right to appeal the decision. *Id.* Wells Fargo argues that Plaintiff cannot establish a duty of care because it did nothing to exceed the scope of its conventional role as a mere lender of money. Mot. at 10-12.

To state a claim for negligence, a plaintiff must allege: (1) the defendant's legal duty of care to the plaintiff; (2) breach of that duty; (3) causation; and (4) resulting injury to the plaintiff. *Merrill v. Navegar, Inc.*, 26 Cal.4th 465, 500 (2001). "The legal duty of care may be of two general types: (a) the duty of a person to use ordinary care in activities from which harm might reasonably be anticipated, or (b) an affirmative duty where the person occupies a particular

---

[4] To the extent that Plaintiff seeks remedies under section 2924.12 that do not apply to the present status of the property, the Court confirms that Plaintiff may only seek remedies under the appropriate section. *Vasquez*, 2013 WL 6001924, at *7. "For example, if no trustee's deed upon sale has been recorded, Plaintiff's claims . . . for actual damages, attorneys' fees, and treble damages are unavailable until such time as the deed upon sale has been recorded." *Id.*

relationship to others." *McGettigan v. Bay Area Rapid Transit Dist.*, 57 Cal. App. 4th 1011, 1016-17 (1997). "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide." *Vasquez v. Residential Invs., Inc.*, 118 Cal. App. 4th 269, 278 (2004). As a general rule, under California law, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095-96 (1991) (citation omitted).

In California, the test for determining whether a financial institution exceeded its role as money lender and thus owes a duty of care to a borrower-client involves "the balancing of various factors, among which are: (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to him, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm." *Id.* at 1098.

District courts in California are divided on the question of when lenders owe a duty of care to borrowers in the context of the submission of and negotiations related to loan modification applications and foreclosure proceedings. Relying on *Nymark*, a number of cases have held that a financial institution does not owe a borrower a duty of care because the loan modification process is a traditional money lending activity. *See Settle v. World Sav. Bank, F.S.B.*, 2012 WL 1026103, at *8 (C.D. Cal. Jan. 11, 2012) (compiling cases); *Rockridge Trust v. Wells Fargo, N.A.*, 2013 WL 5428722, at *36 (N.D. Cal. Sept. 25, 2013); *DeLeon v. Wells Fargo Bank N.A.*, 2011 WL 311376 (N.D. Cal. Jan. 28, 2011); *Ottolini v. Bank of America*, 2011 WL 3652501, at *7 (N.D. Cal. Aug. 19, 2011); *Coppes v. Wachovia Mortg. Corp.*, 2011 WL 1402878, at *7 (E.D. Cal. Apr. 13, 2011) (Plaintiff's contradictory allegations that Defendant denied a loan modification application and that Defendant granted a loan modification that caused Plaintiff injury did not establish a duty because they did not plausibly suggest that Defendant actively participated in the financed enterprise beyond the domain of the usual money lender).

Other courts have concluded that a financial institution has exceeded its role as a money

9

1  lender once it accepts an application for a loan modification, and is thus subject to a standard of
2  reasonable care in handling the application.  *See Rijhwani*, 2014 WL 890016, at *16; *Garcia v.*
3  *Ocwen Loan Serv., LLC*, 2010 WL 1881098, at *3 (N.D. Cal. May 10, 2010); *Trant v. Wells*
4  *Fargo Bank, N.A.*, 2012 WL 2871642, at *6-7 (S.D. Cal. July 12, 2012); *Ansanelli v. JP Morgan*
5  *Chase Bank, N.A.*, 2011 WL 1134451, at *7 (N.D. Cal. Sep. 11, 2013); *Avila v. Wells Fargo Bank*,
6  2012 WL 2953117, at *12–*14 (N.D. Cal. July 19, 2012); *Chancellor v. One West Bank*, 2012
7  WL 1868750, at *13-14 (N.D. Cal. May 22, 2012).

8        The Court finds this second line of cases persuasive.  Thus, Plaintiff may properly allege
9  that Wells Fargo owed her a duty of care in processing her loan modification application.  In
10 reviewing the *Nymark* factors, the Court finds that at least five of the six weigh in Plaintiff's favor.
11 The loan modification was intended to affect Plaintiff – it would have reduced her mortgage
12 payment.  The potential harm to Plaintiff from mishandling the application processing was also
13 foreseeable: the loss of an opportunity to keep her home was the inevitable outcome.  Although
14 there was no guarantee the modification would be granted, Plaintiff alleges that the mishandling of
15 the documents deprived her of the possibility of obtaining the requested relief.  The injury to
16 Plaintiff is certain, in that she lost the opportunity to modify her loan.  There is also a close
17 connection between Wells Fargo's conduct and any injury actually suffered, because, to the extent
18 Plaintiff otherwise qualified and would have been granted a modification, Wells Fargo's alleged
19 conduct precluded the loan modification application from being properly processed.  Finally,
20 "[t]he existence of a public policy of preventing future harm to home loan borrowers is shown by
21 recent actions taken by both the state and federal government to help homeowners caught in the
22 home foreclosure crisis."  *Garcia*, 2010 WL 1881098, at *3 (citing Cal. Civ. Code § 2923.6).

23       In sum, taking Plaintiff's allegations as true, the Court finds that Wells Fargo's role went
24 beyond that of a "conventional" lender that relates to the "mere" lending of money.  Accordingly,
25 the Court DENIES Wells Fargo's Motion as to Plaintiff's negligence claim.

26 **CONCLUSION**

27       Based on the analysis above, the Court DENIES Wells Fargo's Motion to Dismiss.  The
28 Court shall conduct a Case Management Conference on June 12, 2014 at 10:00 a.m. in Courtroom

1  B, 15th Floor, 450 Golden Gate Avenue, San Francisco, California.  The parties shall file a joint
2  case management statement by June 5, 2014.
3       **IT IS SO ORDERED.**

5  Dated: May 13, 2014

                                                       _____
                                                       MARIA-ELENA JAMES
                                                       United States Magistrate Judge